UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KIM ELLIS,<br><br>Defendant. | Case No. 01-cr-00344-EMC-20<br><br>**ORDER GRANTING DEFENDANT'S PETITION REQUESTING A JUDICIAL RECOMMENDATION FOR EXTENDED LENGTH OF RESIDENTIAL RE-ENTRY CENTER (RRC) PLACEMENT**<br><br>Docket No. 2103 |

Defendant Kim Ellis petitioned the Court for a judicial recommendation that he be placed in a residential re-entry center (RRC)-halfway house for the final 12 months of his sentence pursuant to 18 U.S.C. § 3621(b). The United States does not object to an order requiring Bureau of Prison (BOP) personnel to conduct an individualized consideration whether and for how long Defendant Ellis should be placed in an RRC, but claims that Defendant has not, on the current record, established why he should be placed in an RRC for the maximum period of twelve months.

A.  Legal Standard

Pursuant to the Second Chance Act, an inmate must be considered for placement in a residential re-entry center (RRC) for up to twelve months in an attempt to avoid recidivism. 18 U.S.C. § 3624(c)(1). The goal of such placement is to "afford . . . a reasonable opportunity to adjust to and prepare for the reentry of th[e] prisoner into the community." *Id.* The parties agree that the placement decision is committed to the BOP's discretion, in consideration of the following factors:

(1) the resources of the facility contemplated;
(2) the nature and circumstances of the offense;
(3) the history and characteristics of the prisoner;
(4) any statement by the court that imposed the sentence—

>             (A) concerning the purposes for which the sentence to
> imprisonment was determined to be warranted; or
>             (B) recommending a type of penal or correctional facility as
> appropriate; and
>     (5) any pertinent policy statement issued by the Sentencing
> Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b). The Court may not order BOP to reach a specific result, but, as the United States concedes, may order BOP to direct an individualized consideration of Defendant's request pursuant to the statutory factors. *Sacora v. Thomas*, 628 F.3d 1059, 1064 (9th Cir. 2010). *See* 18 U.S.C. § 3621(b) (district court's recommendations "shall have no binding effect" on the BOP); *United States v. Ceballos*, 671 F.3d 852, 855-56 (9th Cir. 2011) (explaining that a "district court's recommendation to the Bureau of Prisons is just that—a recommendation"); *Rodriguez v. Smith*, 541 F.3d 1180 (9th Cir. 2008) (affirming district court order that BOP consider prisoner for transfer to an RRC pursuant to statutory factors).

B.  Factual Background

Mr. Ellis plead guilty to participating in a conspiracy to possess 5 kilograms or more of cocaine powder and to distribute 50 grams or more of cocaine base in violation of 21 U.S.C. § 346 in December 2005. In March 2006, then-presiding Judge Marilyn Patel sentenced him to a prison term of 240 months for the drug offense. Judge Patel recommended that Defendant be placed in a California facility near his family which provided a 500 hour drug treatment program. *See* Docket No. 1447 at 2 (March 29, 2006 Judgment Against Defendant Kim Ellis); Docket No. 1446 (March 27, 2006 Criminal Pretrial Minutes).

Mr. Ellis was allegedly a member of the "Big Block" street gang. The government had maintained that its cooperating witnesses identified him as a shooter for the gang, a fact which he disputed. *See* Docket No. 1441 (Sentencing Memorandum of the United States); Docket No. 1437 (Sentencing Memorandum of Kim Ellis). Mr. Ellis has not been convicted of any such violent offenses.

In connection with his sentencing, Mr. Ellis sent a hand-written letter to Judge Patel in March 2006. *See* Docket No. 1437, Ex. A. In the letter, he explained that his mother and father were both addicted to drugs and that he was responsible for his own care since the age of 11. *Id.* at 1. He stated that he had to "grow up fast," had lost many family members and friends along the

way, and that, lacking any role models, he began using drugs at age 11 to ease the painful situation he was in. *Id.* Those circumstances, in addition to economic difficulties, he stated, were why he fell into criminal activity. He explained, "I had a choice of making $130 every 2 weeks or $250-300 a night coming from a broken family with nothing to eat & going to sleep hungry it wasn't hard making that decision, even though I see I took the wrong direction." *Id.* He emphasized that "doing the same thing for so long it's kind of hard breaking out of a pattern you've been accustom[ed] to for so long." *Id.* at 1-2. Having been sent to jail, he realized the harm he had caused his family and childrens, and stated, "I don't want my kids to experience the pain & suffering I [have] been through." *Id.* at 2. By that time, after 4 years of incarceration, Mr. Ellis claimed he had a "clear head" and that he had realized that "the street life leads to nothing but death or jail." *Id.* He stated, "I'm also not afraid to ask the court for help in my rehabilitation." *Id.* He explained,

> I know one thing for sure, after doing 20 yrs in prison & getting back into society at age 42-44 with six months to get a job & housing is not enough time to adapt to this fast changing world, my worst fear is being homeless, as of now I have nothing, I was sleeping anywhere I could. So after 17 years in prison I know I'll be in a worster [sic] position than I was. I say all this to say can you please help me your Honor. [. . .] I just want to be changed and not torchered [sic] so I can be there for my kids. [. . .] I am willing and want to be changed. [. . .] I know I have made a lot of poor decisions to land myself in this position, but all I ask is that the Court have understanding of my situation and see I need <u>serious help</u>.

*Id.* at (emphasis in original).

Mr. Ellis submits evidence that, since that time in 2006, he has taken and completed approximately sixty courses through the Prison Educational Program, and has completed his GED, an Associate's Degree, and more than 50 rehabilitating classes including a 40 hour drug abuse program. *See* Ex. A. He contends that this coursework demonstrates his efforts to rehabilitate himself. The United States did not object to Mr. Ellis's claims.

Mr. Ellis also claims that he has demonstrated good conduct and compliance with Federal Bureau of Prison (PBOP) conditions during his nearly 15 years of incarceration, and that he stands at a 6 Level Security Custody Prison points, an "exemplary pattern of prison conduct." Petition at 3. The United States did not object to this claim, but other than the claim in his request, Mr. Ellis

3

1 did not submit any evidence to support it.

2 In his request, Mr. Ellis claims that placement in a halfway house for 12 months prior to the running of his 240 month sentence will assist him in securing stable employment to support his family and to reintegrate into the community. He says that he will be at a "disadvantage" upon release because he lacks tangible assets, a residence, the economic resources to independently and immediately "actualize himself to the community or society" in light of the evolution of technology, and changes in society and his community since his incarceration. He states that the lack of a readily available residence, work offers, or other community support place him at a high risk of recidivism that merits an extended placement at the RRC. The United States does not appear to disagree with these claims but merely states that Mr. Ellis's claims are "conclusory" and "do[] not indicate what his current assets are, nor what his family living situation is currently or will be upon his release, nor what effect (if any) his various in-custody courses may have had in keeping him current with technological and other changes that society has undergone since his sentencing in March 2006." Response at 2.

C. Discussion and Recommendation

The Court generally agrees with the United States that BOP personnel at Mr. Ellis's current facility will have more information available to them to make a more comprehensive determination regarding Mr. Ellis's request. Nevertheless, the Court notes that Judge Patel specifically recommended placing Mr. Ellis in a facility with drug treatment options; that Mr. Ellis apparently has pursued those drug treatment options; that Mr. Ellis, very early during his incarceration, had already determined to attempt to rehabilitate himself while incarcerated, and that he in fact pursued extensive educational opportunities; and that Mr. Ellis, since 2006, has had a personal goal of being able to support himself and his family upon release. Although Mr. Ellis does not specifically identify how society, technology, or his community have changed since his incarceration, it is not difficult for the Court to understand that serious difficulties attend re-integration after 20 years of confinement and separation from the community. In light of the limited record before the Court and the lack of any adverse information presented by the United States, the Court hereby recommends that Mr. Ellis be placed in an RRC for the final 12 months of

his confinement. Mr. Ellis has shown that he will likely benefit from additional support to make plans for stable housing and employment, particularly in light of the fact that, prior to his incarceration, he apparently lacked both.

D. <u>Conclusion</u>

The Court **RECOMMENDS** the BOP place Mr. Ellis in an RRC for the final 12 months of his confinement. The Court **ORDERS** the BOP to perform an individualized analysis of the appropriateness of such placement pursuant to 18 U.S.C. § 3621(b).

**IT IS SO ORDERED**.

Dated: October 17, 2017

_____
EDWARD M. CHEN
United States District Judge

5